| | |
|---|---|
| 3 | 17 |
| 5 | 398 |
| 5 | 401 |
| 12 | 359 |
| 12 | 360 |
| 12 | 361 |
| 12 | 362 |
| 12 | 367 |
| 12 | 368 |
| 3 | 17 |
| 32 | 555 |
| 3 | 17 |
| 38 | 60 |
| o38 | 724 |
| 3 | 17 |
| 51 | 37 |

### PRESENT:

HON. GEORGE B. LAKE, CHIEF JUSTICE.
" DANIEL GANTT, } ASSOCIATE JUSTICES.
" SAMUEL MAXWELL, }

---

CHARLES HAGENBUCK, PLAINTIFF IN ERROR, V. ALEXAN-
DER REED, TREASURER OF WASHINGTON COUNTY, DE-
FEDANT IN ERROR.

Taxation: SCHOOL LANDS. Lands donated to this state by the United
States for school purposes, and which have been sold on credit, are sub-
ject to taxation, although the state has not actually parted with the legal
title.

1. Such lands are not exempt from taxation under the provisions of
section one of the act providing a system of revenue, approved February
15th, 1869.

2. The right to possess, enjoy, and dispose of such land, which is essen-
tial to ownership, is no longer in the state but for the time being in the
purchaser.

———: ———. And if the land so taxed was sold at a tax sale, the state
would not be estopped from the enforcement of her lien for the purchase
price of the land.

2

**Statutes:** RULE OF CONSTRUCTION. In the construction of a statute, effect must be given, if possible, to all its several parts. No sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will.

THIS was a petition in error brought to reverse the judgment of the district court of Washington county.

The legislature having, on the 24th day of June, A. D. 1867, passed an act providing for the sale of school lands donated to the state of Nebraska by the general government, the plaintiff in this action, at the sale of such lands in June, 1869, became the purchaser of the southeast quarter, and the southwest quarter, of section sixteen, township eighteen north, of range ten east of the sixth principal meridian, paying one-tenth of the purchase money, and giving his promissory note payable January 1, 1880, for the balance, with interest payable annually in advance. Being in possession of the lands above mentioned, the same were assessed for taxation in 1871. Plaintiff having failed to pay the taxes so assessed, the defendant, being county treasurer, distrained the property of the plaintiff and advertised it for sale. This action was then brought to enjoin the sale and upon trial thereof, the court below dismissed the same for want of equity. To reverse this judgment the cause was brought to this court.

*Carrigan and Osborne*, for plaintiff in error.

I.   The lands must be the subject of taxation, or the assessment is utterly void, and all subsequent proceedings are illegal. *Blackwell on Tax Titles*, 406, and cases there cited.

II.   The lands were school lands, the property of the state, and are, by the provisions of our revenue law,

exempt from taxation, and should be omitted in the lists. *General Statutes* 1873, *section one*, 896.

III.   When our statute uses the words "property of the state," it should be construed to extend to lands owned by the state.   And where a statute uses the word "owner," it refers to the owner of the legal title, the person owning the fee ; so also, where the word "title" is used in a statute, it refers to the legal as well as to the equitable title.   Interests are not created by statutes.   *Wright v. Bennet*, 3 *Scammon*, 258.   *Whiteside v. Divers*, 4 *Scammon*, 336.   *Blackwell on Tax Titles*, 421.   *Emerson v. The Inhabitants of the county of Washington*, 9 *Maine*, 88.

IV.   The legal title to school lands contracted to be sold, remains in the state.   *General Statutes* 1873, *section* 14, 994.

V.   Lands should be listed in the name of the owner of the fee, in the name of the lessor or mortgagor, and if not so listed, shall be entered by the assessor as unknown. *General Statutes* 1873, *section* 13, 900.

VI.   It may be insisted that section two of the revenue act includes this class of lands.   But such construction cannot be given it, in connection with the first section exempting lands owned by the state.   The word "bought" necessarily implies a sale, and the legal definition of a sale is "a transmutation of property from one person to another for a consideration."   1 *Blackstone Com., Book II*, 446.   There is certainly no change of property in this case, and the only proper construction to give the language above cited, is where the state sells, *i. e.* conveys, the property, and relies on the responsibility of the purchaser for payment.   It cannot be presumed that the legislature would provide for the taxation of property, when by force of law the taxes would have to be refunded,

which would in some instances be the case if lands of this class were held subject to taxation; certainly the legislature never intended to compel the revenue officers to do that which is useless. Courts will look to the absurd consequences which will follow such a construction of the statute. *The People v. The Canal Commissioners*, 3 *Scammon*, 153.

VII. Courts may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear and intelligible. *Pearce v. Atwood*, 13 *Mass.*, 344. The first sub-division of the first section, of the "act to provide a system of revenue," is clear and intelligible, having a fixed legal meaning, and can be construed in no other way than to exempt lands owned by the state from taxation, and so long as the title to the lands remains in the state, the lands cannot be sold for taxes.

VIII. Taxes are made a lien on the lands on which the levy is made. Legislatures never create liens and deny the means of enforcing them.

*Ballard and Walton*, for defendant in error.

I. The court should presume that the legislature intended the most reasonable and beneficial construction of their acts, where the design of them is not apparent, and such intention should be collected from the whole act. *Inhabitants of Somerset v. Inhabitants of Dighton*, 12 *Mass.*, 383. *Mason v. Finch*, 2 *Scammon*, 224. *Davis v. Haydon*, 3 *Scammon*, 35. *Jackson v. Van Zandt*, 12 *John.*, 175.

II. Where it is apparent that by a particular construction of a statute in a doubtful case, great public interests will be endangered or sacrificed, it ought not to be presumed that such a construction was intended by the leg-

islature. *The People v. Canal Commissioners,* 3 *Scammon,* 153.

Lake, Ch. J.

The only question discussed by counsel at the bar, and the only one passed upon by the district court is, whether school lands, which have been sold on time, under the act relating thereto, approved June 24, 1867, are subject to taxation before the state has actually parted with the legal title.

Were we inclined to be very technical, the case could be disposed of without meeting this question. The fact that the plaintiff has a plain and adequate remedy at law, furnishes a satisfactory answer to the prayer of his petition. In view, however, of the great importance of the question presented for our consideration, we have thought best not to ignore it altogether, but briefly to give our views of the situation of these lands with reference to our revenue laws.

The land in question is a part of section sixteen, donated to the state, by the United States, for school purposes, and is embraced within the provisions of the act "to provide for the registry of school lands, for the control and disposition thereof, and to provide for the safe keeping of the funds derived from the sale and lease of said lands," approved June 24, 1867. Under the authority of this act the land in question was purchased by the plaintiff, on credit.

On the part of the plaintiff it is urged that inasmuch as the legal title to this land is still in the state, and must remain there until the purchase money shall have been fully paid, it falls within the operation of the first subdivision of section one of the act to provide a system of revenue, approved February 15, 1869, by which the property of the state, including school lands, is declared to be

exempt from taxation, and therefore that the levy of taxes upon it was without authority and wholly void. We think that this argument and the conclusion reached by counsel, require a construction to be given to the several statutes bearing upon this question which is altogether unwarrantable. Even the act of June, 1867, if alone considered, would hardly justify this conclusion. By section twelve it is provided that "no land shall be *sold* for less than its appraised value;" by section fifteen, that "within three days after the receipt of any purchase money for lands *sold as above* the treasurer shall notify the county clerk, etc.;" and by section sixteen, that "payments for land *sold* under the provisions of this act shall be made as follows; for prairie lands, one-tenth of the price cash in hand, and for other lands, one-half cash in hand, with a promissory note for the remainder to mature on the first day of January, 1880,    *    * and in case of non-payment of interest or principal, the land shall be surrendered, with the improvements, to the state." And so on throughout the entire act, the land disposed of under its provisions, is treated as no longer belonging to the state, but to the purchaser at the sale. The right to possess, enjoy and dispose of it, which is essential to ownership, is no longer in the state, but for the time being, at least, in the purchaser. It is true that he may by the terms of said act, in the contingency of non-payment of the purchase money, be required to surrender the land, together with the improvements, to the state, but until then he, and not the state, is to be regarded as the real owner of the land.

By section two of the revenue law, already referred to, it is provided that "all other property," (except that which is specifically exempted by section one) "real and personal, within the state, is subject to taxation; and this section is intended to embrace lands and lots in towns, including lands bought from, or donated by, the United

States, and from this state, whether bought on credit or otherwise." Now to us it seems quite clear that the plaintiff's land is included in this description of property subject to taxation. It had been the property of the state, but at the time the taxes were levied it had been "*bought on credit*" by the plaintiff, who thereby became the owner, not in fee to be sure, but nevertheless the owner in the same sense that he would have been, had his purchase been made from a private person on like terms. The act providing for the sale of school lands being in force at the time of the passage of the revenue law of 1869, it must have been in the contemplation of the legislature, when the latter was framed, as will appear quite evident, from a due consideration of the language just quoted.

No doubt the legislature was well aware of the fact that under the act of 1867, a very large quantity of the state's school lands had been sold, and that in most instances a credit had been given as the statute provides, the state in the meantime retaining the legal title as security for the unpaid purchase money. It therefore seems to us, that if it had been the intention of the legislature to exempt these lands from all the burdens of government, very different language would have been used; but intending the contrary of this, that they should be taxed, and made to bear their just proportion of the expenses of the state, no words more apt than those employed could have been selected to accomplish that object. Should we sanction the construction contended for by the plaintiff in error, what would become of the words "*whether bought on credit or otherwise*" found in section two of the revenue act? To what lands could they possibly refer, if not to such as these? It seems to us, that they must have direct reference to lands in the situation of plaintiff's, or they are without meaning.

We do not conceive that the idea advanced by counsel

Hagenbuck v. Reed.

upon the argument at the bar, that in the event of a sale of the land for non-payment of taxes, the state would lose the unpaid purchase money, is of any force whatever. It is true the tax deed would run in the name of the state, but she would not thereby be estopped from the enforcement of her lien for the purchase price of the land, as provided in the act above referred to. This contingency has been carefully guarded against, and it is accordingly provided that the purchaser at the tax sale takes the land subject to all *claims, liens, or incumbrances*, which the state may have thereon. *General Statutes* 1873, *Section* 67, 923.

In giving a construction to a statute we must, if possible, give effect to all its several parts. No sentence, clause, or word should be rejected as meaningless or superfluous if it can reasonably be avoided; but we should take into account the subject of the enactment, the language employed in its plain, ordinary and popular sense, and from a due consideration of all these, determine what the legislative will must have been. By the application of this rule to the several statutes bearing upon this question we are led to the conclusion that the plaintiff's land is fairly within the operation of section two of the revenue act, and was rightfully taxed.

We are therefore of the opinion, not only upon the technical ground first stated, but because the land in question was a proper subject of taxation, that the judgment of the district court was right and must be affirmed.

GANTT, J., and MAXWELL, J., concur.

JUDGMENT AFFIRMED.