Carpenter, District Judge.
The plaintiff brings this action to restrain the defendants from exercising jurisdiction, by virtue of their respective offices, over the territory known as the North Park.
The complaint recites those sections of the act of the Territorial Legislature of 1861 organizing the counties of Larimer, Boulder, Clear Creek, Gilpin and Summit; the act of 1874 organizing the county of Grand; and the act of the State Legislature of 1877 organizing the county of Routt.
Alleges that the summit of the Colorado front, or Medicine Bow range of mountains, was by such act of 1861 made the line between the counties of Larimer and Summit, and that the North Park, being west of said range, was within the county of Summit, and became a part of the county of Grand upon the organization of that county in 1874.
That the authorities of the counties of Summit and Grand, successively, have always exercised exclusive jurisdiction over said territory of North Park, which is now a commissioners district of the county of Grand.
That there is a large number of inhabitants and a large amount of taxable property in the North Park, and that, during the past year, the defendants, in their official capacity, have attempted to exercise, and threaten hereafter continuously to exercise, jurisdiction over said territory, appointing magistrates, judges of election and other local officers, assessing property and collecting taxes, serving process, etc., to the great detriment of the county of Grand, by loss of its revenues, and difficulties in collecting the same, by reason of such interference.
That the inhabitants of such territory are greatly harrassed thereby, causing endless litigation, etc.
The complaint is supported by affidavits, that, at the time of the organization of the county of Larimer, the Colorado front, or Medicine Bow range was commonly known and designated as the snowy range.
The motion for temporary injunction is resisted by numerous affidavits, to the effect, that by the term “snowy range” has at all times been meant and understood the continental divide, or water-shed range of mountains, dividing the waters of the Atlantic and Pacific oceans. That the Medicine Bow range entirely loses its character as a mountain range twenty miles south of *69 the north line of the State; but the continental divide maintains its character of a snowy range until after it passes beyond the northern limits of the State. No question is raised by the pleadings or by counsel, except as to the true location of the county line.
Equity does not usually interfere to settle boundaries, but it seems that when officers of different counties claim jurisdiction over the same territory, they may be compelled by a taxpayer to interplead, in order that the question of jurisdiction may be settled and the party in error enjoined. Union P. R. R. Co. v. Carr, 1 Wy. Ter., 96.
The first Territorial Legislature of Colorado in 1861 organized seventeen counties, but, in determining the questions here presented, it will only be necessary to notice the boundaries of those in which the term “snowy range” is used, in order, if possible, to determine in what sense the Legislature used such term.
Commencing with Costilla county, we find the second course of the boundary of such county to be as follows: “Thence in a southwesterly direction on said road, to the summit of the ‘snowy range.’ ” Taken with the context, no doubt whatever exists that the “snowy range” here mentioned is the Sangre de Cristo range, at this point far from the continental divide. The term “snowy range” is next used in this act in defining the boundaries of Fremont county, in referring to the Sangre de Cristo range.
In prescribing the boundaries of Park county, we find these expressions: “ The snowy range east of the Arkansas river,” evidently referring to the Mosquito range, also “the snowy range dividing the waters of the Platte from the waters of the Blue.” This latter range is part of the continental divide, the Mosquito range is not. Upon examination of the whole act, in which the expression “snowy range” is made use of some ten times, it is apparent that the Legislature had no thought whatever concerning a divide between the waters of the Atlantic and Pacific slopes, but used the term indiscriminately for any range of mountains the peaks of which were above timber line and perpetually covered with snow to a greater or less extent. “The range” was a term used for the first range encountered in extending a boundary line.
That no confusion could exist, the west line of Boulder county, *70 commencing at a point on the summit of the snowy range, is located “along the summit of first range,” first evidently as approached from the east, or then settled frontiers of the territory, or first intercepted in runuing the southern boundary of such county, and clearly excludes the Gore or Park range, forty miles further west.
Sec. 20 of said act defines the boundaries of Larimer county, as follows: “Commencing at a point where the township line between townships four and five, north, intersects the range line between ranges sixty-seven and sixty-eight, running west six miles; thence south, six miles to the township line between townships three and four, north; thence west, along the northern boundary of Boulder county to the summit of the snowy range; thence in a northerly direction on said summit to the northerly boundary of the Territory; thence to said range line, and south to place of beginning.”
The question to be determined is, what was the intention of the Legislature, expressed in these words: “Thence, in a northerly direction on said summit to the northerly boundary of the Territory.”
There is no dispute about the location of the first thirty-five miles of this line running north from northwest corner of Boulder county, but it is claimed by the plaintiff the line continues to follow the summit of the Medicine Bow range north some forty-five miles further to north line of State, while the defendants insist that the true line breaks off at right angles at the thirty-five mile point above mentioned, and follows the continental divide, or Rabbit Ear range, some forty-five miles in a nearly due west direction to the Park range; thence north, on summit of the last mentioned range, some forty-five miles to the north boundary of the State, the territory in dispute being the North Park, having an area of about 2,000 square miles and a population of 1,000, as the complaint alleges.
The allegations of defendants, that the term “snowy range” meant at all times the continental divide, appear to be unfounded —at least, as used by the Legislature, as we have seen by an examination of the act referred to.
The affiants are also mistaken probably in stating that the continental divide maintains its character as a snowy range until after it crosses the northern boundary of the State, as, according *71 to latest authorities, it diverges from the Park range at right angles about twenty miles south of north line of State, recedes to low hills extending west fifteen miles from Park range, thence north twenty miles to boundary of State, leaving Davis peak, upon Park range, to the east of such divide fifteen miles.
So, in fact, both the Medicine Bow range and continental divide lose their distinctive character as a snowy range before reaching State line.
The Court will take judicial notice of the great geographical features of the State, its lakes, rivers and mountains. (Winnepesagee, Lake Co., v. Young, 40 N. H., 420.) Also of county boundaries. Wharton Ev., Sec. 339, and cases there cited.
The Medicine Bow range is identical with the Colorado front range in its direction and height of summit, and is a continuation of such range, while the continental divide breaks off from the same at right angles, and is lower both in its lowest depression and height of summit.
The west line of Larimer county was made a continuation of the west line of Boulder county, which was expressly designated as first range, and all words used in a statute must be deemed to have some meaning, and be given their proper force. (3 Neb., 17.) But if the term “snowy range” will apply to each of the conflicting lines with equal force, then the course must govern. When calls or natural monuments fail to identify a boundary line, then courses must govern. This is a well-established principle.
The course given northerly, which is north, would seem con clusively to designate the Medicine Bow range as the boundary intended by the Legislature.
The act of 1874 organizing the county of Grand amounts, at least, to a Legislative interpretation, that the Medicine Bow range is the west line of Larimer county. The east line of Grand county is therein described as running south along the western boundaries of Larimer, Boulder and Gilpin counties; then, with minuteness, the angles of such line along the line of Clear Creek county are described. It can scarcely be claimed that the Legislature regarded the Rabbit Ear range, running east and west forty miles, as a part of the ivestern boundary of Larimer county, when we consider the minuteness with which the courses of the east boundary of Grand county are given. Legislative interpre *72 tation, made at a time when the Legislature had absolute control over county boundaries, may be entitled to some consideration, and perhaps the acts of 1861 and 1874 are to be considered in pari materia. There seems to be no doubt that the Medicine Bow range is the “snowy range” intended by the Legislature as the western boundary, and that the North Park, the territory in dispute, is in Grand county.
A. Wright and E. P. Weber, for plaintiff
L. R. Rhodes, E. A. Ballard and Haynes, Dunning & Haynes, for defendants.
The defendant Garbutt, treasurer, will be enjoined from the collection of taxes in North Park; but I see no reason at present why the other officers should be enjoined, as their acts, if unauthorized, are easily corrected at law.