| 51 | 33 |
| 51 | 774 |
| 51 | 33 |
| 62 | 443 |

JAMES J. McINTOSH, TREASURER OF CHEYENNE COUNTY, NEBRASKA, v. FRANK B. JOHNSON.

FILED MARCH 17, 1897.   No. 7211.

1. Statutes: CONSTRUCTION. Statutes remedial in their nature should receive a liberal, and not a restrictive, construction.

2. ——: ——. An imperative rule of construction is that effect, if possible, must be given to every clause and part of the statute.

3. ——: ——. A legislative enactment will be given a prospective operation unless a contrary intent is clearly expressed.

4. ——: ——: COLLECTION OF PUBLIC MONEY. *Held*, That the act of the legislature of 1879, entitled "An act to provide for the collection of public funds and money" (Compiled Statutes, ch. 8, secs. 40, 41), operates prospectively as well as retroactively.

7

5. ———: ———: ———. *First Nat. Bank of South Bend v. Gandy,* 11 Neb., 433, disapproved.

6. Payment: ACCORD AND SATISFACTION. A payment of a part only of a liquidated past-due debt, in full settlement, is not good as an accord and satisfaction.

ERROR from the district court of Douglas county. Tried below before BLAIR, J. *Reversed.*

*L. F. Crofoot, Breckenridge & Breckenridge,* and *W. P. Miles,* for plaintiff in error.

*Wharton & Baird, contra.*

NORVAL, J.

During 1888, and a part of 1889, the defendant, Frank B. Johnson, and one S. C. Morgan were partners engaged in a general banking business at Sidney, Cheyenne county, under the firm name and style of the State Bank of Sidney. In the latter part of June, 1889, Mr. Morgan died, leaving the defendant the sole surviving partner, and the bank being insolvent at the time, closed its doors, and did not afterwards resume business nor pay its depositors. From January 7, 1888, to June 26, 1889, both dates inclusive, Adam Ickes, the treasurer of Cheyenne county, in his official capacity deposited in said bank, on open account, large sums of money belonging to the county, and withdrew a portion thereof as required for use. On the day the bank suspended payment Mr. Ickes, as such county treasurer, had upon deposit therein county funds to the amount of $17,357.40. Plaintiff is the successor in office to the said Adam Ickes, and as such instituted this suit to recover from the defendant, as surviving partner, the sum of $11,-857.40, alleged to be the balance due the county of Cheyenne on account of the moneys so deposited in said State Bank of Sidney. A trial of the issues raised by the pleadings was had to the court, resulting in a finding and judgment against the plaintiff. Two defenses are relied upon by the defendant to defeat the action, to-wit: (1.) Neither the county of Cheyenne nor the plaintiff ever had any

legal claim against the defendant or the State Bank of Sidney on account of the funds deposited by Treasurer Ickes. (2.) Accord and satisfaction. These propositions will receive attention in their order.

The first contention is to a greater or less extent sustained by two decisions of this court, viz., *State v. Keim*, 8 Neb., 63, and *First Nat. Bank of South Bend, Ind., v. Gandy*, 11 Neb., 431. The first case was an action by the state to recover certain public funds belonging to it which had been deposited with the defendants, who were engaged in the banking business at Falls City, under an agreement that it should be delivered upon demand. It was held there could be no recovery, since the deposit was unauthorized, and there had been no ratification of it by public law. The writer by no means concedes that an illegal or unauthorized deposit of state moneys in a bank constitutes no cause of action in favor of the state to recover such moneys; but accepting the decision in *State v. Keim* to be sound, is it decisive of the question before us? We do not think so. After it was rendered the legislature, in 1879, passed the following act, which received the approval of the executive:

"An act to provide for the collection of public funds and
        moneys.

"*Be it enacted by the Legislature of the State of Nebraska:*

"Section 1. That in all cases in which public moneys, or other funds belonging to this state, or to any county, school district, city, or municipality thereof, have been deposited or loaned to any person or persons, corporation, bank, copartnership, or other firm or association of persons, it shall be lawful for the officer or officers making such deposit or loan, or his or their successors in office to maintain an action or actions for the recovery of such moneys deposited or loaned, and all contracts for the security or payment of any such moneys or public funds made shall be held to be good and lawful contracts binding on all parties thereto; *Provided,* Nothing herein contained shall be construed to in any manner affect the

liability of any surety or signers of any official bond heretofore or hereafter given or made in this state.

"Sec. 2. All actions heretofore brought by any public officer, either in his own name or officially, for the recovery of any public moneys heretofore loaned or deposited shall be sustained, and all remedies allowed in other cases, by attachment or otherwise, shall be admissible and allowed in such actions as in other cases." (Compiled. Statutes, ch. 8, secs. 40, 41; Session Laws, 1879, p. 156, secs. 1, 2.)

It was the decision in *State v. Keim, supra,* doubtless, which prompted the legislature to enact this law, for the purpose of authorizing the collection by suit of public moneys illegally loaned or deposited by their custodian,— a remedy which this court had ruled did not theretofore exist in this state. If the act above quoted is to be given prospective operation, and not a retroactive effect merely, then it is very evident that the present action is maintainable. It is argued by the defendant that the purpose of the act of 1879 was to legalize prior contracts made by treasurers for the depositing or loaning of public funds and to empower the treasurer making such loan or deposit, or his successor in office, to collect the same by suit, and that this law has no prospective application. The case of the *First Nat. Bank of South Bend, Ind., v. Gandy,* 11 Neb., 433, is authority for such interpretation. The question there involved was whether county moneys deposited in a bank by county treasurers prior to the enactment of the present depository law are subject to garnishment process in a suit to recover a debt of the officer depositing the same. It was held that they were, since it did not lie in the mouth of Mr. Gandy, or any of his privies, of which the depository bank was one in respect to the funds, to assert that they were not the individual moneys of Mr. Gandy, which alone he had a right to deposit in bank, and the latter might lawfully receive from him on deposit. The only reference made in the opinion in that case to the law of 1879 above quoted is the follow-

ing: "I do not deem it necessary to make any reference to the act of February 24, 1879, cited by counsel for defendants in error, further than to say that by its own terms said act only covers cases of loans of public funds made before the passage of said act, and so does not apply to the case at bar." We are persuaded that the author of that opinion either misread the statute, or had not in mind three well recognized rules which should have obtained in ascertaining the meaning, scope, and effect of the act. The statute is in some respects a remedial one, and therefore should receive a liberal construction. (*Rogers v. Omaha Hotel Co.*, 4 Neb., 58; *Swearingen v. Roberts*, 12 Neb., 336; *Harmon v. Omaha*, 17 Neb., 551; *Wright v. Chicago, B. & Q. R. Co.*, 19 Neb., 182; *State v. Fremont, E. & M. V. R. Co.*, 22 Neb., 328.) Again, an imperative rule of construction is that effect, if possible, must be given to every clause and part of a legislative enactment. (*Hagenbuck v. Reed*, 3 Neb., 24; *McCann v. McLennan*, 2 Neb., 288; *King v. State*, 18 Neb., 380; *State v. Babcock*, 21 Neb., 599.) Another familiar canon governing the interpretation of statutes is that they will be given a prospective operation unless a contrary intention is plainly expressed. (*State v. City of Kearney*, 49 Neb., 337, and cases cited.) There is nothing, either in the title or the body of the act, which indicates the least intention on the part of the legislature that the law should operate retroactively alone. On the contrary, it is manifest that it cannot be so construed if effect is given to each word and clause of the statute in question. That it was the purpose to legalize actions then pending for the recovery of public moneys brought by any officer either in his individual name or officially, and also to legalize prior contracts for the deposit of such money cannot be successfully disputed; but that the law was intended to have a retroactive effect alone we deny. The interpretation contended for by defendant renders meaningly the words "or hereafter" used in the proviso clause of section 1, which declares that "nothing herein contained shall be construed to in any

manner affect the liability of any surety or signers of any official bond heretofore or hereafter given or made in this state." Construing the words "heretofore or hereafter given" in connection with the rest of the section in which they appear shows that the act was to have both a prospective and retroactive effect, and was intended to apply to, and cover, contracts or deposits made after the passage of the act, as well as those made prior to its adoption. The act in unmistakable terms empowered the bringing of suits upon contracts which should thereafter be made for the deposit of public funds, and not merely actions upon contracts which had been made before the passage of the law. To construe the act so as to give it both a retroactive and prospective application, effect can be given to every word therein contained, while the language of the law, without a forced or arbitrary construction, will not support a mere retroactive effect. The decision in *First Nat. Bank of South Bend, Ind., v. Gandy*, *supra*, is disapproved.

The facts upon which the defense of accord and satisfaction is predicated are these: In December, 1889, after the death of Mr. Morgan, the defendant entered into an agreement with Mr. Ickes, the county treasurer of Cheyenne county, by the terms of which Mr. Ickes, as county treasurer, accepted certain real estate in the city of Omaha of the agreed value of $6,000, owned by Mr. Johnson, and the promissory note of the latter for $3,000 in settlement of the amount due from the bank for the county funds which had been deposited therein. Mr. Ickes at the time executed and delivered to Mr. Johnson a receipt, of which the following was a copy:

"OMAHA, NEB., Dec. 11, 1889.

"Received of F. B. Johnson his note for three thousand dollars, bearing even date herewith, payable in one year, with interest at seven per cent per annum, which, when paid, will be in full of all claims against him in connection of State Bank of Sidney.          ADAM ICKES,

"*Co. Treas. Cheyenne County.*"

That the above mentioned note was subsequently paid by the defendant is conceded. Whether the county commissioners accepted the benefits of said settlement and ratified the same with full knowledge of the facts, in our view it is unnecessary to determine, since the compromise is not binding for want of a consideration. It was admitted by the defendant upon the trial that he was a partner of Mr. Morgan in the State Bank of Sidney, and that at the time of the death of the latter there was on deposit in said bank, to the credit of the county treasurer of Cheyenne county, the sum of $17,357.40. No payments had been made upon this indebtedness at the date of the compromise. There was therefore at that time a liquidated amount due from the defendant as sole surviving partner of over $17,000, and this admitted liability was settled by the acceptance of property and note of the defendant of the actual and agreed value of over $6,000 less than the amount of the indebtedness. The acceptance of part of a liquidated demand past due, in full settlement, is not a bar to an action on such demand. In this case the amount of the indebtedness was admitted, and the defendant being the sole surviving partner, there was no room for dispute that he was liable for the payment. There was no consideration for the agreement to accept a lesser sum than the amount due; hence there is no complete accord and satisfaction. The proposition is too plain to require the citation of authorities in support of it. The judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.