STATE OF NEBRASKA, EX REL. WILLIAM A. SAUNDERS, V.
ROBERT O. FINK, TREASURER.

FILED OCTOBER 5, 1905.   No. 14,310.

1. **Statutes: CONSTRUCTION.** In construing a statute, an imperative rule
   is that effect, if possible, must be given to every clause and part
   of the statute.

2. **Tax Sale Certificate, Sale of.** Section 26, chapter 75, laws of 1903,
   construed, and *held* not to authorize the sale of tax sale certifi-
   cates owned by the state, or by any county or city, for less than
   the amount due thereon, and that the amount due thereon is to
   be determined by adding to the face of the certificate interest
   computed at the rate provided in section 27 of the act.

ERROR to the district court for Douglas county: ALEX-
C. TROUP, JUDGE.   *Affirmed.*

*W. A. Saunders* and *Wharton, Adams & Morgan,* for
plaintiff in error.

*W. W. Slabaugh, John P. Breen, W. H. Herdman* and
*A. G. Ellick, contra.*

JACKSON, C.

In a proceeding by the county of Douglas under chapter
75, laws of 1903 (popularly known as the "Scavenger
Law"), the city of Omaha, on the 24th day of March, 1905,
purchased lots 15 and 16 of J. E. Riley's Subdivision, an
addition to the city of Omaha, the bid of the city on lot
15 being $80.80, and on lot 16 $100.   By the decree under
which the property was sold it was determined that the
tax on lot 15 amounted to $80.80, and on lot 16 to
$315.34.   The county treasurer issued certificates to the
city of Omaha according to the provisions of section 22 of
the act under consideration, the certificate covering lot 15
being numbered 5,095, and the one covering lot 16 num-
bered 3,898.   Proceeding under section 32 of the act the
county treasurer, respondent herein, in the month of April,

44

1905, caused notice to be published of the sale required by him to be held, commencing on the first Monday of May, and included in the notice the certificates issued to the city of Omaha, as above recited. The property not having been redeemed prior to the sale, the relator bid at the sale for tax sale certificate No. 5,095, covering lot 15, the sum of $75, and for tax sale certificate No. 3,898, covering lot 16, the sum of $90, and at the same time offered to pay all unpaid subsequent taxes on both lots. There were no other bidders for either of these certificates, unless the city of Omaha was a bidder, concerning which we will determine later in this opinion. The respondent refused to accept the bid of the relator, and thereupon the relator applied to the district court for Douglas county for a writ of mandamus to compel the respondent to accept his bid and assign the two tax sale certificates in dispute to him.

In the petition the relator set out in full all of the proceedings of the county of Douglas leading up to the sale of the two lots described, the sale of these lots to the city of Omaha, and the issuance of the certificates therefor, the publication of the notice in April, 1905, and his bid for the two tax sale certificates, and alleged: "That there were no other bidders for either of said certificates, except the city of Omaha pretended to bid the sum of $80.80 for certificate No. 5,095, and to bid the sum of $100 for certificate No. 3,898; that the relator at the time of making said bid tendered cash therefor and offered to pay all taxes not covered by the certificates on the real estate covered by the certificates, and demanded that said bids be accepted and the certificates assigned to him; that the county treasurer, in violation of law, refused and declined to accept the bid of the relator, or to assign the certificates to him, but pretended to accept the bid of the city of Omaha, although the city of Omaha did not offer to pay cash therefor; that the certificates are still in the possession of the respondent; that the relator was the highest and best bidder at the sale, and the only one that offered to pay cash for said certificates." He also chal-

lenged the right of the city to bid on the tax certificates, and the right of the respondent to accept the bid of the city, and alleged that he had no interest in the property except such as he acquired by reason of his bids. To the petition the respondent demurred. The demurrer was sustained by the district court, and the writ refused, and, the relator electing to stand upon his petition, the case was dismissed. The relator appeals.

The contention of the relator is: First, that the city of Omaha could not become a bidder at the sale for the tax certificates in question, and, second, that, as he was the only bidder at the sale, his bid should have been accepted and the certificates assigned to him. The respondent contends that, as the bid of the relator did not cover the amount due on the certificates, he was not authorized to accept the bid, and for that reason the writ was properly denied. The questions thus presented call for a construction of the provisions of section 26 of the act under which the proceedings were had. This section is as follows: "Any person desiring to purchase any certificate of tax sale owned by the state or by any county or city, either at public or private sale, may secure an assignment thereof by paying to the county treasurer the amount due thereon, as well as all subsequent taxes and assessments on the property then delinquent, provided, a premium sale may be purchased at public sale for less than the amount of the decree and such sale shall be subject to the provisions of section twenty-three. Such assignment shall be made by indorsement of the county treasurer in his official capacity, countersigned by the county clerk. A record shall be kept of such assignments by the county treasurer and the county clerk. The effect of such assignment shall be to vest in the assignee the same rights which would have been secured to such assignee had he been the original purchaser at the sale." The term "premium sale" as used in this act applies to such sales as are made for less than the amount of the decree.

In the consideration of the case it does not seem impor-

tant to inquire into the right of the city of Omaha to become a bidder at the sale of the tax certificates, unless the respondent is mistaken as to the rights of the relator, because, if the contention of the respondent is correct, it was unnecessary for the city to become a bidder at the sale in order to protect its rights. We shall therefore first determine as to the contention of the respondent. In the construction of a statute an imperative rule is that effect, if possible, must be given to every clause and part of the statute. *Franklin v. Kelley*, 2 Neb. 79; *McCann v. McLennan*, 2 Neb. 286; *Union P. R. Co. v. Burlington & M. R. R. Co.*, 19 Neb. 386; *State v. Babcock*, 21 Neb. 599; *State v. Bartley*, 39 Neb. 353; *McIntosh v. Johnson*, 51 Neb. 33. In the construction, therefore, of section 26, authorizing any person to purchase tax certificates of tax sale owned by the state or by any county or city, effect should be given to that part of the section preceding the proviso, as well as the proviso itself, and the two parts should be harmonized, if possible, so that neither will be violated, because, if it may be said that there is an apparent contradiction, it is the duty of the court, if a reasonable construction can be found which avoids such contradiction, to adopt such construction. *Franklin v. Kelley,* 2 Neb. 79. If, therefore, the proviso may be construed to give it force without changing or modifying the plain meaning of what precedes, then such construction should be adopted. By that part of the section preceding the proviso, the relator was authorized to purchase the tax sale certificates at either public or private sale, by paying the amount *due thereon,* and all subsequent taxes. Evidently "the amount due thereon" was the face of the certificates, with interest, as provided by section 27 of the act, and, keeping in view the meaning of the term "premium sale," it becomes evident at once that the amount due on the certificates might differ materially from the amount due on the decree, as it did in this case. With that distinction in mind, the right of the relator may readily be determined by giving effect to every clause and part of the section under consid-

eration. He had the right to purchase at the sale tax certificates in dispute for the amount due thereon, although that amount might be less than the amount of the decree. To hold that he had any other or greater right would be to indulge in conjecture as to the object which the legislature had in view, and no such conjecture of the object is permissible, unless such object can be clearly ascertained from the language of the statute. *Nebraska R. Co. v. Van Dusen,* 6 Neb. 160. It seems clear that the respondent was right in declining the bid of the relator, and in refusing to assign the certificates upon such bid.

We recommend that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foreging opinion, the judgment of the district court is

AFFIRMED.

---

STATE OF NEBRASKA, EX REL. JOHN C. PENTZER ET AL., RELATORS, V. ROBERT MALONE ET AL., RESPONDENTS; JOHN R. BENNETT ET AL., INTERVENERS.

FILED OCTOBER 19, 1905.  No. 14,326.

ORIGINAL application for a writ of mandamus to compel respondents to meet and canvass returns of election. *Writ allowed.*

*Stewart & Munger* and *R. J. Greene,* for relators.

*Tibbets & Anderson,* for respondents.

*E. C. Strode* and *A. G. Greenlee,* for interveners.

PER CURIAM.

Peremptory writ of mandamus allowed as prayed by in-

terveners. Writ not to issue until the further order of the court. Opinion to be filed later.

The following opinion was filed November 11, 1905:

1. **Statutes: VALIDITY.** Conceding the provisions of sections 12 and 13 of the amendatory act of the legislature (laws 1905, ch. 76) relating to the election of police judge to be invalid, which is not determined, the remainder of such act would not be affected thereby. Such provisions, it is held, were not an inducement to the passage of the remainder.

2. ———: ———. The provision found in said act (sec. 12) for an election of city aldermen on the first Tuesday in June, 1905, is not special legislation inhibited by the constitution, because applicable to the one city only which at such time comes under the operaton of the law.

3. ———: **ENFORCEMENT.** Invalid provisions of an act, not operating to avoid the whole, cannot be relied on to excuse the performance of a duty enjoined by the valid portions of the act.

HOLCOMB, C. J.

The interveners pray for a peremptory writ of mandamus to compel the respondents to meet and canvass the votes cast for city alderman at an election held in the city of Lincoln on the first Tuesday of June, 1905, and to declare the result of such canvass. The respondents seek to justify their refusal to canvass such vote, so cast, on the ground that the law providing for such an election is invalid. The election was held under the provisions of an ·amendatory act of the last legislature, the same being laws 1905, chapter 16, entitled "An act to amend sections 9, 12, 13, 15, 21, 33, 34, 63, 76, 97, 115, subdivisions 1, 8, 14 and 26 of section 129, all of chapter 13, article I, of the Compiled Statutes of Nebraska, 1903, entitled 'An act to incorporate cities of the first class having a population of more than forty thousand and less than one hundred thousand inhabitants; to define, regulate and prescribe their organization, duties, liabilities, powers and government, and to repeal article I of chapter 13a of the Compiled Statutes of 1889, and to repeal the sections so

amended, and. to declare an emergency.'" Section 12 of the amendatory act provides: "The general city elections in cities governed by the provisions of this act shall be held on the first Tuesday in April in the year 1905, and on the first Tuesday in May every two years thereafter. Provided, however, that a special city election shall be held on the first Tuesday in June, 1905, for the purpose of electing seven city aldermen as provided by this act. At all general and special city elections held under the provisions of this act the polls shall be opened in each election district at such places as may be designated by the mayor, or fixed by the ordinance, and shall be kept open between the hours of eight o'clock A. M. and seven o'clock P. M. and no longer. Provided further, that all incumbents in office, including the seven councilmen, whose terms of office under operation of existing law expire in the year 1906, shall be privileged to continue in office until the general city election to be held in the year 1907."

1. It is contended by respondents, in justification of their course, that the law is invalid because it operates to extend the term of the police judge for a period of one year contrary to the constitutional provision concerning that office, which fixes the term thereof at two years. It is said that a police judge has been elected in the city of Lincoln in the even numbered years for many years past. It is the law, as settled by several adjudications, that a police judge is a constitutional officer whose term is fixed by that instrument at two years, and that it is not competent for the legislature to extend or abridge the term as thus fixed in the paramount law. It is also held that these provisions of the constitution are self-executing, and that an election to the office of police judge at a general election at the expiration of the term of the incumbent vests in the successful candidate a perfect title to the office, and that such elections shall be had at a general election as specified in the constitution, rather than at the time of holding city elections as may be provided by statute at a time different than that when the general

elections are held. *State v. Stuht,* 52 Neb. 209; *State v. Moores,* 70 Neb. 48, 57; *State v. Nolan,* 71 Neb. 136. Assuming then, without deciding the question, that the provisions of the section under consideration relating to the election of police judge is void because conflicting with the constitution, it by no means follows that the entire amendatory act must fall. In fact it at once becomes apparent that these provisions with reference to the election of a police judge are wholly foreign to the act, and their elimination in no way affects the remainder, nor interferes in the least with the legislative purpose in its passage of the law, or in its execution. The act is yet complete in all its parts, and the invalid part, if it be invalid, is quite separable from the remainder, which is in nowise dependent thereon, nor does it appear that the invalid part is such as to warrant the belief that the legislature would not have acted had it not been incorporated in the act. *State v. Stuht, supra; Trumble v. Trumble,* 37 Neb. 340; *State v. Moore,* 48 Neb. 870.

2. It is also contended that the provisions of section 12 for an election of aldermen on the first Tuesday of June, 1905, is special legislation inimical to the constitution relating to that subject, which inhibits special legislation or local laws regarding the specified subjects therein enumerated, and in all cases where a general law can be made applicable. Const., art. III, sec. 15. The argument is built on the theory that there can be but one such election, and that it applies only to one city, the city of Lincoln, and that the court will take judicial cognizance of the fact that but the one city can ever come under its provisions; that is, that at the special election provided for in June for city aldermen, Lincoln will be the only city participating in such election or that ever will participate therein, and that it therefore applies especially to Lincoln and can never apply to any other city, whatever may be their growth in the future. This may be granted, and yet the conclusion contended for does not follow. The classification of cities according to population, even though but one

city may come under the provisions of the act at the time of its adoption, is permissible under an unbroken line of decisions in this jurisdiction, beginning with *State v. Graham*, 16 Neb. 74. The general classification, then, being in harmony with the fundamental law, can it be successfully contended that the provision for the first election to be held in April or in June contravenes that instrument? The election provided for in April, 1905, would be equally special legislation as that to be held in June. In either case there can be but the one election and it can apply to but the one city. These are simply temporary provisions incorporated for the purpose of putting a law, general in its scope and effect, and admittedly constitutional in its main objects and purposes, into operation and effect. It is for the purpose of effecting a transformation from the old to the new order of things. In this respect a general law, such as contended for, cannot be made applicable. The constitution, it will be observed, recognizes that all laws and all provisions of a law cannot be made general in their operation. The authorities cited by counsel for respondent from Illinois and Minnesota (*Devine v. Board of Commissioners*, 84 Ill. 590, and *Thomas v. City of St. Cloud*, 90 Minn. 477, 97 N. W. 125), are not in point. In each case cited the law was condemned as a whole because applicable for all time to but one city or county. The language of each of the acts held invalid was such that at no future time could any municipality, even though having attained the required population, enjoy the benefits of any of its provisions. In other words, there was no classification of cities generally, but only an act, special in its nature, applying for all time to but the one city or county then in existence of the required population. *State v. Scott*, 70 Neb. 685, recently decided by this court is analogous in principle to the cases last decided. In the case at bar the act applies to all cities now or hereafter having the population therein specified. This, as we have seen, does not infringe on the constitutional inhibition against special legislation. The provisions for the first

elections under the amendatory act to be held in April
and June are incidental to the main objects of the law, and
do not, because they become obsolete after such elections
and therefore applicable only to the city, render the act
special legislation within the meaning of the term as used
in the fundamental law. In many statutes, we doubt not,
will be found provisions of a temporary character which,
when they have served their purpose, become of no fur-
ther use, and which, if consideration be had of them, stand-
ing alone and as independent legislation, would be special
or local in their nature, scope and effect. Indeed, in the
section as it stood before the present amendment, and in
the section following, will be found provisions equally ob-
jectionable as the one under consideration, and yet we
have never heard of them being questioned on the ground
of being special legislation inimical to the constitution.

3. It is further argued that the amendatory act in ques-
tion cannot be upheld because of matters not germane to
the original section found in section 13, as amended. It is
insisted that the provision therein found which says: "The
mayor shall be ex officio president of said council, and
shall preside at the meetings thereof, and shall appoint
the standing committees of said council, and in the event
of a tie vote shall cast the deciding vote. Provided, how-
ever, that the council shall have the power to elect a presi-
dent *pro tempore*, who shall preside over the meeting of a
council in the absence of the mayor and who shall exercise
the powers of the mayor on his absence from the city" is in
violation of the rule now well established in this jurisdic-
tion to the effect that, where the title to a bill is to amend a
particular section or sections, no amendatory legislation
not germane to the subject matter of the original section
proposed to be changed is permissible. *Armstrong v.
Mayer*, 60 Neb. 423; *State v. Bowen*, 54 Neb. 211. The
original section provided for the election of city officers,
including the mayor and a city council, and fixed the terms
of their respective offices. The subject embraced in the
section, and to which it relates, was in part the formation

of the city council. The amended section making the mayor the presiding officer of that body and to that extent an ex officio member appears clearly, as it appears to us, germane to the subject of legislation embraced in the section before amended. Each relates to the composition of the body denominated the city council. It would also seem that the provision giving the mayor the deciding vote in the event of a tie is not so foreign to the subject matter embraced in the section as to render the same invalid. The mayor is not made a member of that body in the fullest sense of the word. His membership is limited to certain purposes, that is, presiding over the deliberations of the council, and casting the deciding vote in the event of an evenly divided vote by the members of the body proper. It is our duty to uphold the law, unless it is clearly and beyond reasonable doubt in conflict with the fundamental law. If a reasonable doubt exists, it must be solved in favor of the validity of the statute. Whenever a legislative act can be so construed as to avoid a conflict with the constitution and give it the force of law it will be so construed, although such construction may not be the most obvious and natural one. *State v. Poynter*, 59 Neb. 417; *State v. Smith*, 35 Neb. 13. Whether, however, the added powers which are conferred on the mayor in the section amended are germane to the subject matter of the original section we need not here determine. If not so, the statute would only yield to the extent of the repugnancy, and no further. The respondents could not avail themselves of such invalid portions of the section. Conceding them to be such, it can hardly be said that it is apparent from the act itself that these provisions, if treated as invalid, were such an inducement to the passage of the act as to avoid the whole. The legislature will be presumed to have intended to act within its constitutional limitations, and if it has exceeded its powers the provisions in excess thereof only will be declared inoperative, except it be apparent that the rejected part was an inducement to the adoption of the remainder.

1. **Officers:** LEGISLATIVE POWER.  The legislature cannot appoint county officers, nor by an act solely for that purpose extend the terms of such officers.

2. **Constitutional Law.**  Chapter 47 of the laws of 1905 is unconstitutional and void.