STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. NEMAHA COUNTY BANK: E. H. LUIKART, RECEIVER, APPELLANT: SCHOOL DISTRICT NO. 29, INTERVENER, APPELLEE.

FILED MAY 19, 1933. No. 28471.

*F. C. Radke, Barlow Nye, Skiles & Skiles, Fred G. Hawxby* and *Edgar Ferneau,* for appellant.

*Ernest F. Armstrong, Ira D. Beynon* and *Yale C. Holland, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and PAINE, JJ.

EBERLY, J.

The Nemaha County Bank of Auburn, Nebraska, is an insolvent state bank, whose affairs are now in charge of E. H. Luikart, its duly appointed receiver. The school district of the city of Auburn, as intervener, brings this action to enforce a claim for a trust fund in the amount of a deposit of funds belonging to the school district made by its school treasurer in the bank prior to insolvency. There was a trial to the court resulting in a finding and judgment for the school district as prayed. The receiver appeals.

The history of the transaction involved in the litigation is as follows: During all the time occupied by the transaction, prior to the insolvency of this bank and the appointment and qualification of its receiver, George E. Codington was its president and one of its executive officers, and also *"ex officio"* treasurer of the intervening school district. In his capacity as *ex officio* school treasurer he deposited, and kept on deposit, school funds as received in his official capacity. These deposits were credited to a separate account designated on the books of the bank as "G. E. Codington, School Treasurer." At the time that this institution was taken over by the state authorities there was a credit balance, concededly correct, of $5,400.46. A receiver for the Nemaha County Bank was appointed on August 12, 1929. Within 20 days thereafter, in accordance with law, the receiver filed in the district court for Nemaha county, where the receivership proceedings had been instituted and were then pending, an application in writing setting forth the names of the creditors of the bank, as shown by the books on August 31, 1929, pursuant to which an order was made by said court fixing October 21, 1929, as the final day

in which claims of creditors of said bank might be filed, and also fixed November 15, 1929, at an hour and place stated, as provided by law, for hearing of claims so filed. Statutory notices appear to have been correctly given of the order so made. It is conceded by all parties that on October 5, 1929, George E. Codington addressed and caused to be delivered to the secretary of the school board of Auburn a letter subscribed by Codington, of which the following is a copy:

"Gentlemen: I call your attention to the fact that the time for filing claims with the Receiver of the Nemaha County Bank will expire October 21, 1929, and that you should protect the interest of the school district of the City of Auburn, Nemaha county, Nebraska, in this matter and prepare and file a claim for the amount of all said school district funds deposited in said Nemaha County Bank. This should be speedily done. Please advise me whether you will prepare and file, on behalf of the school district of the City of Auburn, Nemaha county, Nebraska, the claim suggested herein. Yours truly, G. E. Codington."

At the adjourned regular session of this board of education, held on October 15, 1929, the following proceedings were had:

"Moved by Mr. Zacharius and seconded by Mr. Howe that the secretary be directed to notify Mr. G. E. Codington that the board believes that such school funds of the Auburn district as have been turned over to the treasurer are to be cared for by the treasurer on his own responsibility; and that such balance as may not have been expended according to law should be turned over to his successor at the close of the treasurer's term of office. The board does not believe it has any responsibility for the safekeeping of the school funds in the hands of the treasurer, and believes that he has the right and duty to take any necessary steps to safeguard the school funds; and that the duty of the board is to see that all funds not lawfully expended by the board are turned over by such treasurer to his successor."

Pursuant to the foregoing resolution adopted, the following written communication was, by the Auburn board of education, transmitted to George E. Codington:

"Dear Mr. Codington: It is the understanding of the Auburn board of education that the attorney general has ruled that the treasurer of a school district is personally responsible for all school funds of the district turned over to him. Since the school funds, once received by the treasurer, are protected in any way the treasurer sees fit, and may be deposited in any bank and withdrawn without the authority of the board of education, the board does not believe it has any responsibility for filing a claim with, or authority to file a claim with, the Nemaha County Bank. The board believes that it is the right of the treasurer on his own responsibility to take such steps as are necessary to protect the funds entrusted to his care. Respectfully yours, Auburn Board of Education, by J. A. Jimerson, Secretary."

Thereafter on October 19, 1929, George E. Codington caused to be properly filed a claim in writing, for the benefit of the school district of the city of Auburn, verified under oath by him as "Treasurer of the School District of the City of Auburn, in the County of Nemaha, in the State of Nebraska." This written claim, thus authenticated and filed, set forth the making of the deposit of $5,400.46 by Codington as treasurer of the school district; that moneys deposited were solely the property of the district; and also set forth the action of the school treasurer and board of education had in relation thereto, attaching to the claim as exhibits copies of the letters sent and received, and the resolution or motion in reference to the transaction adopted by the school board, hereinbefore set out. The claimant also expressly alleged in said claim: "That the said sum of $5,400.46 was and is a trust fund for the benefit of said school district and was and is held by the said Nemaha County Bank and its successors as such, and that said amount should be allowed as a preferred claim against said bank, but that

if said amount is not so allowed as a preferred claim, that it should be given the same priority as all other money deposited in the usual course of business without any agreement."

Thereafter, prior to November 15, 1929, the receiver filed, as provided by law, his list of claims and classification thereof, in which the claim of the school district was classified by the receiver as a valid and preferred claim for a deposit, but he denied that said claim was in truth for a "trust fund" and entitled as such to priority over other creditors.

On November 15, 1929, the district court, by its general order then entered, approved the classification of claims as made by the receiver, and by this order further provided that any dissatisfied claimant might file a petition of intervention within 25 days from the date of this order, and also designated a day for hearing petitions thus filed.

Thereafter on December 9, 1929, Codington, as treasurer, for and in behalf of the school district, caused to be filed a formal petition of intervention, setting forth the facts as to the deposit of the $5,400.46 of the school district at length; incorporated therein as exhibits the correspondence and action of the board of education, to which reference has hereinbefore been made; and prayed for the allowance of the claim as a "trust fund" and entitled to priority as such.

Issues were made up on behalf of the receiver, and trial was had on January 14, 1930, which resulted in a decree denying to the claim the qualities of a trust fund, but allowing it as a general deposit. On February 19, 1930, on motion, the judgment so entered was set aside and a new hearing ordered. On May 8, 1930, the matter was again heard by the district court for Nemaha county upon the merits, and it was again formally determined and adjudged that the $5,400.46 constituted a general deposit, and that said intervener was not entitled to the allowance of the claim as for a trust fund, with the

preference that such latter finding, if made, would entail. No appeal was prosecuted from this finding; and after the entry of the judgment of May 8, 1930, the receiver of said bank duly paid to the school district dividends to the amount of 35 per cent. or $1,890, which were duly accepted and since retained by such district. May 8, 1930, was a day of the February, 1930, term of the district court for Nemaha county, which adjourned *sine die* on September 29, 1930. Thereafter two regular terms of this district court were convened and each adjourned *sine die,* without further action being taken in this proceeding. On December 30, 1931, being one of the days of the regular September, 1931, term of this district court, a petition of intervention was again filed in behalf of the school district, which, for a second time, alleged the making of the deposit of $5,400.46 by Codington, its school district treasurer and also president of the Nemaha County Bank; alleged the trust nature of the fund thus deposited, and that the bank still had on hand the sum of $3,510.29 of the funds thus deposited; and asked that the said amount be allowed as a trust fund, and that all assets of every kind or nature belonging to and held by the Nemaha County Bank be impressed with a trust thereon superior to the claims and rights of all other creditors. This petition embraced no more than was contained in the petition of intervention caused to be filed by the school district treasurer; the facts alleged and relied on were identical.

To this pleading the receiver answered admitting the receipt of the deposit, and pleaded at length the proceedings theretofore had and the judgment duly made and entered therein as hereinbefore set forth, in bar, by way of estoppel, and as *res judicata.* The intervener replied. On February 25, 1932, the district court, after a trial on the merits, found generally for the intervener, and adjudged that the sum of $3,510.30 was a charge and first lien on all assets still remaining in the possession of the receiver, and directed the payment thereof to be made in preference to the claims of depositors.

. In this court appellee, in its brief, states its position as to the proceedings on which appellant relies, as follows: "It is true that Mr. Codington, employing his own attorney, brought some action for an adjudication of this claim. This action was brought without notice to the school board, neither the school board nor the school district were a party to the suit and consequently are not bound by the adjudication in that proceeding."

Considered in its entirety, this statement is not justified by the record. The school board had actual and timely notice of the failure of the bank, the existence of the deposit of its moneys therein, and of the necessity of immediate action. It took formal official action thereon. It caused the action thus taken to be communicated to George E. Codington, its school treasurer, for his information and official guidance. His action followed as has already been outlined, and is in all respects consistent and in harmony with the action taken by the board of education. The school district was at least a nominal party to the court proceedings prosecuted by the school district treasurer for its sole benefit. After its termination the school district received, accepted, and appropriated $1,890, the results of such proceedings, under such circumstances as necessarily impute knowledge of their source.

The record discloses that these proceedings, thus carried on by George E. Codington, were carried on by him strictly and expressly in his official capacity as school district treasurer, to recover for the district its moneys thus deposited. The controlling question is, therefore, what was his power and authority, in view of the facts established by the evidence?

It may be conceded, in the following discussion, that this school district is the ultimate beneficiary, and that the general rule is: "Every action must be prosecuted in the name of the real party in interest." Comp. St. 1929, sec. 20-301.

"In ascertaining whether the plaintiff is the real party in interest, the primary and fundamental test to be applied is whether the prosecution of the action will save the defendant from further harassment or vexation at the hands of other claimants to the same demand. If the defendant is not cut off from any just defense, offset, or counterclaim against the demand and a judgment in behalf of the party suing will fully protect him when discharged, then is his concern at an end." 2 Bancroft, Code Practice and Remedies, 1094.

But this does not necessarily imply that the school district is vested with the sole and exclusive right of instituting and maintaining legal proceedings. Section 20-301, Comp. St. 1929, actually concludes with the words, "except as otherwise provided in section 26 (20-304)." The section thus referred to provides in part: "An executor, administrator, guardian, trustee of an express trust, a person with whom or in whose name a contract is made for the benefit of another, *or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted. Officers may sue and be sued in such* name as is authorized by law." (Italics ours) Comp. St. 1929, sec. 20-304.

This section 20-304, however, is not to be construed as depriving those holding the beneficial interest from suing in their own names as the real parties in interest. It merely creates an optional alternate method for the enforcement of rights. Thus, it is held that the trustee of an express trust who holds legal title may maintain an action without disclosing a beneficiary or the nature of the trust. So far as the defendant is concerned, such trustee is the real party in interest, as we have defined that term, and may sue in his own name. 2 Bancroft, Code Practice and Remedies, 1097. By a parity of reasoning the terms "a person expressly authorized by statute" and "officers," as employed in the statutory provision last above quoted, must be deemed to denote the real parties in interest in the sense that a judgment in their

behalf will fully protect the defendant sued by them, when discharged, and also, irrespective of the results thereof, will render such judicial proceeding binding and effective in all respects.

As to the statutory powers vested in school district treasurers in certain subjects of school district litigation, it will be remembered that, to remedy the situation created by the case of *State v. Keim*, 8 Neb. 63, the legislature of 1879 under the title, "To Provide for the Collection of Public Funds and Moneys," duly enacted legislation relating to judicial proceedings for the recovery of public funds and moneys (Laws 1879, p. 156), which provided in part: "In all cases in which public moneys, or other funds belonging to the state or to any county, school district, city or municipality thereof, have been deposited or loaned to any person or persons, corporations, bank, copartnership or other firm or association of persons, it shall be lawful for the officer or officers making such deposit or loan, or his or their successors in office, to maintain an action or actions for the recovery of such moneys deposited or loaned, and all contracts for the security or payment of any such moneys or public funds made shall be held to be good and lawful contracts binding on all parties thereto." Comp. St. 1929, sec. 77-2601.

The second section of this act of 1879 (not now appearing in Comp. St. 1929) also provided: "All actions heretofore brought by any public officer, either in his own name or officially, for the recovery of any public moneys heretofore loaned or deposited shall be sustained."

It is obvious that when this legislation is read in connection with its title as an entirety, in the light of the conditions that obtained at the time of its enactment, it must be deemed as involving more than a law made for the protection of the individual who has made an unlawful deposit. *Hagenbuck v. Reed*, 3 Neb. 17; *Union P. R. Co. v. Burlington & M. R. R. Co.*, 19 Neb. 386; *Logan County v. Carnahan*, 66 Neb. 693.

The proper interpretation of this statute was the question presented to this court in *McIntosh v. Johnson*, 51 Neb. 33. In that case an action was instituted in the district court by McIntosh in his official capacity, as treasurer of Cheyenne county, and as successor in office to Adam Ickes, who as county treasurer of that county, in his official capacity, had made certain deposits with defendant Johnson at the time when Johnson was a private banker. This court sustained this procedure and thus necessarily determined that the statute authorized and empowered the county treasurer to bring the action in his official capacity, and further determined that the bringing of it in his official name, as party plaintiff, was a proper, though not necessarily the exclusive, form of correct practice. In this *McIntosh* case, as applied to the facts then before the court, the following controlling principles were announced:

"Statutes remedial in their nature should receive a liberal, and not a restrictive, construction.

"An imperative rule of construction is that effect, if possible, must be given to every clause and part of the statute."

In construing this act of 1879, in connection with our Code provisions quoted, it is also to be remembered that "It was competent for the legislature, in authorizing the suit, to direct in what name, and by whom it should be brought." *Trustees of Greene Township v. Campbell*, 16 Ohio St. 11, 16.

This in turn necessitates the conclusion that, as the first action was instituted and carried on by George E. Codington in his official capacity, pursuant to the lawful authority of statute, and in accord with the duly expressed determination of the board of education, and wherein prior to the final consideration thereof by the district court pleadings were formally made up on said claim pursuant to directions of such district court and evidence was formally adduced to establish the contentions of the respective parties at an open public hearing,

from which the right of appeal is guaranteed by the Constitution, the final judgment then rendered therein is conclusive, not only upon Codington, but also upon his successor in office, and the interests of the real beneficiary, who, under the terms of the statute, was in fact actually represented by him.

In legal parlance, by these circumstances the doctrine of *res judicata* is invoked. *McIntosh v. Johnson*, 51 Neb. 33; *Holsworth v. O'Chander*, 49 Neb. 42; *State v. Savage*, 64 Neb. 684.

"The doctrine of *res judicata* is that a question once determined by a judgment on the merits is forever settled, so far as the litigants and those in privity with them are concerned. The question decided is, while the decision stands, a sealed and closed question." *State v. Savage*, 64 Neb. 684.

The facts presented in the present record, as above outlined, are so essentially different from the facts presented to this court in *State v. Bank of Commerce*, 54 Neb. 725, *State v. Bank of Commerce*, 61 Neb. 22, and *State v. First State Bank*, 121 Neb. 515, as to render the principles announced in the three cases last named wholly inapplicable to the present controversy.

It follows that the district court erred in failing to sustain the defense tendered and established by the receiver herein, and in its entry of judgment against such defendant.

The judgment of the district court is, therefore, reversed and the action dismissed.

REVERSED AND DISMISSED.